**Michael J. SHELTON, Petitioner-Appellant,**

v.

**Carl L. BRUNSON, Col. U. S. Air Force, Commander 3500th Pilot Training Wing, Reese Air Force Base, Texas, et al., Respondents-Appellees.**

**No. 72–1042.**

United States Court of Appeals, Fifth Circuit.

Aug. 17, 1972.

John J. C. O'Shea, Lubbock, Tex., for petitioner-appellant.

Eldon B. Mahon, U. S. Atty., W. E. Smith, Asst. U. S. Atty., Fort Worth, Tex., Robert B. Wilson, Asst. U. S. Atty., Lubbock, Tex., Carl A. Corrallo, Litigation Div., USAF, Office of Judge Advocate General, Washington, D. C., for respondents-appellees; C. Claude Teagarden, Lt. Colonel, USAF, Litigation Div., Office of The Judge Advocate General, Washington, D. C., of counsel.

Before BELL, GOLDBERG and RONEY, *Circuit Judges.*

BELL, Circuit Judge:

This is an appeal from the denial of habeas corpus relief to appellant, an Air Force sergeant. The decision of the district court is reported. Shelton v. Brunson, N.D.Tex., 1971, 335 F.Supp. 186. We affirm in part and vacate and remand in part for further proceedings.

The petition for the writ was directed to effecting appellant's discharge from the Air Force on the ground that he was being held in the Air Force unlawfully. Cf. Orloff v. Willoughby, 1953, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842. The thrust of the petition was that appellant's reenlistment contract was aborted by events occurring subsequent to reenlistment which events will be hereinafter discussed. The rejection of this claim forms the subject matter of one of the assignments of error.

There are also assignments of error based on an alleged lack of due process in the demotion of appellant by the Air Force, and in an alleged discriminatory medical standard as between the requirements for those entering the Air Force and those retained in the Air Force. We find no error in the rejection of these claims by the district court and therefore affirm as to these assignments of error.

Appellant volunteered for the Air Force after having received two years of college education. At his preinduction physical examination it became apparent that he had a high blood pressure problem. His blood pressure was barely within acceptable limits. He was accepted by the Air Force and enlisted for a term of four years. At the time he was aware of an Airman's Education Commission Program (AECP) which was operated by the Air Force Institute of Technology. Under this program an enlisted man in the Air Force with some college background could complete college at Air Force expense and then serve four years as a commissioned officer in the Air Force. Appellant contends that the opportunity to participate in this program was a critical factor in his initial decision to enlist.

After completing basic training in the spring of 1966, appellant applied for the AECP program. He passed the necessary tests and was in all respects found qualified prior to taking a physical examination. He was then found to be disqualified for the program because of high blood pressure. From then until November 1967, a period well in excess of one year, appellant was under the continuing treatment of Dr. Hild, an Air Force physician. During this period according to the official Air Force medical records on appellant, his blood pressure was checked on 23 occasions and on 19 of these it was at such level as to make him unacceptable for participation in the AECP program.

In the fall of 1967, appellant received a letter from the Air Force Institute of Technology suggesting that he renew his application for the AECP program. He then decided to apply again for the program and underwent another physical examination on January 10, 1968 for that purpose. His blood pressure was found to be within acceptable limits (130/80), and the examination carries the notation "Qualified for Commission."

On December 20, 1967, prior to this January examination, Dr. Hild had written a letter to the Air Force stating that in his opinion appellant's blood pressure condition was such as to qualify him for enrollment in the AECP program. Appellant describes this as a request for waiver. It was never answered. As it developed, appellant's blood pressure was within acceptable limits and a waiver was unnecessary at the time. On the trial, appellant contended that he received a waiver but he totally failed to prove the existence of an express waiver, either oral or written. We agree with the district court that no express waiver was established. Moreover, the Air Force regulations expressly prohibit a waiver.

Aside from the question of waiver there remains the question whether appellant is entitled to relief on the basis of his blood pressure being within limits for retention in the service as distinguished from the requirement for original entry into the service. The Air Force requirements are less stringent for retention than for original entry into the service or into the AECP program. This theory of relief rests on the acceptance of appellant for the AECP program with knowledge of his history of high blood pressure coupled with the notation on his physical examination report that he was "Qualified for Commission." Appellant contends that he was led to believe that this finding of qualification covered both entry into the program and commissioning upon receiving his degree, completing officers training school, and being otherwise qualified.

It appears that upon being admitted to the AECP program, appellant was discharged from his original four year enlistment after having served some two years. As required, he reenlisted for a period of six years, two of which were to be spent in college. He was then promoted from an E-3 to an E-5 rating, and enrolled at Colorado State University. He received a degree in mathematics in June 1970.

In May of 1970 he received orders to report to officers training school. In June, while on leave, he received telephonic advice that he would not be commissioned on account of high blood pressure and obesity.[1] He was also advised that he would be eliminated from the AECP program.

It appears that appellant's release from the program was based on physical examinations conducted in January and April 1970. On both of these occasions,

his blood pressure was beyond the acceptable limits for entry into the Air Force under the regulations. His blood pressure may or may not have been within the limits for retention in the service if already commissioned. This question was not considered in the district court.[2] On July 7, 1970, appellant's orders to officers training school were cancelled and he was reduced to his original rank of E-3 and reassigned to mechanical duty. The upshot is that he must serve two years over and above his original enlistment.

■  The district court gave considerable if not controlling weight on the questions of waiver and misrepresentations to ¶ 54 of appellant's reenlistment contract where he signed the following statement:

> "I have had this contract fully explained to me, I understand it, and certify that no promise of any kind has been made to me concerning assignment to duty, geographical area, schooling, special programs, assignment of Government quarters, or transportation of dependents except as indicated.—."

The district court concluded that appellant had no right to rely on any representation made to him by anyone in the Air Force as to waiving blood pressure requirements and that the paragraph indicated that he did not so rely. We find this paragraph to be ambiguous insofar as the question of appellant's physical qualification for a commission is concerned. The facts are that he was qualified for a commission upon taking the physical examination for entry into the AECP program. He was apparently qualified for retention in the Air Force at the time he was dismissed from the program but was not qualified for entry

---

1. The district court discussed the obesity question but made no finding with respect to whether appellant was in violation of the obesity regulations at the time and this will be a question for consideration on remand. Appellant sharply disputes any contention of obesity.

2. The question may carry its own answer. As we understand the Air Force brief, blood pressure requirements for retention in the service are the same for officers and enlisted men and appellant is being retained in the service.

into the service as an enlisted man or as an officer.

■ It would be entirely consistent with the text of ¶ 54 to conclude that the question presented here is not covered by the terms of ¶ 54. In any event, whether a contract is ambiguous is a question of law. St. Paul Mercury Insurance Company v. Price, 5 Cir., 1966, 359 F.2d 74, 76. We hold that the language of this paragraph is ambiguous to the extent of the question presented. On remand, the district court should first determine whether the parties to the contract intended that ¶ 54 cover the precise question in issue. If so, the matter will be at an end. If not, the issue must be resolved without reference to ¶ 54.

In resolving the question without regard to ¶ 54, if the case takes that turn, appellant should be allowed to support his theory by evidence as to the meaning of the notation "Qualified for Commission" on his 1968 physical examination and the import of his acceptance into the AECP program. This evidentiary support may be in the form of representations, whether express or implied by conduct. See In re Grimley, 1890, 137 U.S. 147, 151, 11 S.Ct. 54, 34 L.Ed. 636; and Ex Parte Blackington, D. Mass.1917, 245 F. 801, 803, on the applicability of the general law of contracts to enlistment contracts. See also Gausmann v. Laird, 9 Cir., 1969, 422 F.2d 394 and Chalfant v. Laird, 9 Cir., 1969, 420 F.2d 945, where it was held that the evidence was insufficient to support an enlistee's claim of misrepresentation.

■ Thus the district court is instructed first to determine whether both parties intended ¶ 54 to apply to this series of events, and if either did not, to determine whether the alleged misrepresentative words and conduct occurred. If the court makes findings of fact that the alleged misrepresentation occurred, then Shelton will have shown that he was subject to continuous and continual enticements that in their totality were so egregious that he will be entitled to avoid the reenlistment contract. See Restatement of Contracts §§ 470, 475, 476. The consideration of the issue and the evidence in support thereof is without regard to proof of an express waiver. Appellant, as stated, failed to establish a waiver, and we affirm the district court as to that question.

Affirmed in part; vacated and remanded in part for further proceedings not inconsistent herewith.