Ronald G. MEEKS, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 97–791.

United States Court of Appeals for Veterans Claims.

May 3, 1999.

Jeffrey J. Wood was on the brief for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarty, Deputy Assistant General Counsel; and Amy S. Gordon were on the brief for the appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

NEBEKER, Chief Judge:

The appellant, Ronald G. Meeks, appeals from a March 25, 1997, Board of Veterans' Appeals (BVA or Board) decision that denied entitlement to an effective date earlier than January 16, 1985, for a 100% schedular disability evaluation for service-connected choroidal gyrate atrophy, an eye disorder that results in contraction of visual fields. *See* Record (R.) at 10; *see also* DORLAND'S ILLUS- TRATED MEDICAL DICTIONARY 158 (28th ed.1994) [hereinafter DORLAND'S]. Mr. Meeks argues that under 38 U.S.C. § 5110(a) and (b)(1) he is entitled to an earlier effective date for his total rating, back to the date of discharge. The Secretary argues that, when section 5110 is read in its entirety, it supports the BVA's determination. Based on the record on appeal and the briefs of the parties, and for the reasons given below, the Court will affirm the BVA's decision.

## I. FACTS

Mr. Meeks served on active duty from April 1966 to December 1969. R. at 16. In November 1970, he applied for service connection and compensation for an eye condition, initially diagnosed as retinitis pigmento- sa. R. at 61–64. (Retinitis pigmentosa is a disease marked by progressive loss of retinal response, retinal atrophy, attenuation of retinal vessels, and clumping of pigment, with contraction of the field of vision. DORLAND'S at 1454.) In December 1970, the VA regional office (RO) denied the claim, finding that retinitis pigmentosa is a constitutional or developmental defect, which could not be service connected. R. at 73–74. However, the RO stated that not all of Mr. Meeks' service medical records had been received and that when they were, further consideration would be given to his claim and that he would be notified. Apparently, no further action was taken by the RO. *See* R. at 298.

In August 1988, the BVA granted service connection for an eye condition, now diagnosed as choroidal gyrate atrophy, and Mr. Meeks was awarded a 70% rating effective March 1985. R. at 181. In August 1989, the RO awarded a 100% rating from January 1985, the date of VA's receipt of a request that the claim for service connection be reopened. R. at 209–10. In April 1991, the BVA denied Mr. Meeks' claim for a compensable rating from December 1969 to January 1985, and he appealed to the Court. R. at 247–54.

Based on medical opinions in the record that suggested Mr. Meeks had had the same eye condition since service, the Court remanded the case in July 1993, *see Meeks v. Brown*, 5 Vet.App. 284 (1993), for the BVA to provide an adequate statement of reasons or bases regarding the denial of an increased (compensable) rating for the eye condition from December 1969 thru January 1985. *Id.* at 288. The Court also held that the 1970 claim remained pending. *Id.* at 287. After remand, the BVA received records documenting the constriction of Mr. Meeks' visual field at various times. R. at 397–429. In March 1995, the RO awarded a 50% rating from December 1969, a 60% rating from June 1973, and a 70% rating from December 1974 to January 1985. R. at 438. Mr. Meeks again appealed, seeking a 100% rating from the earliest period. R. at 449.

In August 1995, the BVA remanded the case for further development, including obtaining a specialist's opinion regarding the

extent of Mr. Meeks' visual field constriction shown at any given period of time between December 1969 and January 1985. R. at 451. In August 1998, the VA chief of ophthalmology reviewed all available records, and determined that the visual fields were first shown to be 5 degrees or less in both eyes in November 1986. R. at 471. In its decision after the appeal was returned, the Board noted that a 100% rating is warranted in the case of visual impairment where there is bilateral concentric contraction of visual fields to 5 degrees or less. 38 C.F.R. § 4.84a, Diagnostic Code (DC) 6080 (1998). The Board also found that relatively recent opinions by private physicians asserting that, back to service or shortly thereafter, Mr. Meeks had visual impairment limiting his field to 5 degrees, were contradicted by the graphic representations of visual field, prepared at the times in question (some by one of the private physicians), which showed greater visual acuity. R. at 10–11. The BVA noted that, because the 1970 claim was still open, the earliest effective date for the 100% rating should be November 1986, and that the RO had erred in assigning an effective date of January 1985, the date of the communication that the RO had construed as Mr. Meeks' effort to reopen. R. at 12. Reasoning, in effect, that the error was nonprejudicial, the Board left the earlier date undisturbed. *Id.* The Board concluded that, based on the law and the entire evidence of record, "the Board is unable to find that a 100 percent evaluation may be assigned effective earlier than January 16, 1985." Mr. Meeks appealed that decision to the Court.

## II. ANALYSIS

Principles of statutory construction require that, where a statute has a plain meaning, a Court shall give effect to that meaning. Accordingly, our analysis begins with an examination of the applicable statutory language itself. "If the statutory language is plain, and its meaning clear, no room exists for statutory construction. There is nothing to construe." *Gardner v. Derwinski*, 1 Vet.App. 584, 587–88 (1991); 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.01 (5th ed.1992) [hereinafter SUTHERLAND'S]. Furthermore, "[d]eter-

mining a statute's plain meaning requires examining [not only] the specific language at issue [but also] the overall structure of the statute [as well]." *Gardner*, 1 Vet.App. at 586. Therefore, "each part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole." SUTHERLAND'S § 46.05; *see Sweitzer v. Brown*, 5 Vet.App. 503, 505 (1993).

The controlling statutory provisions are 38 U.S.C. § 5110(a) and (b)(1). Subsection 5110(a) provides, in pertinent part, as follows:

> Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a); *see also* 38 C.F.R. § 3.400(a) (1998).

Subsection (b)(1) carves out an exception to subsection (a), as follows: "The effective date of an award of disability compensation to a veteran shall be the day following the date of discharge or release if application therefor is received within one year from such date of discharge or release." 38 U.S.C. § 5110(b)(1). Here, Mr. Meeks argues, correctly, that under 38 U.S.C. § 5110(b)(1), the effective date of his award of compensation for his service-connected disability must be the day after his date of discharge because VA received his initial— and eventually successful—application within one year from his date of discharge. *See* Appellant's Brief (Br.) at 8–9; *see also Meeks, supra,* at 287 (holding that 1970 claim continued pending). However, he further argues that, because his 1970 claim remained pending and the assignment of rating is "down stream" from an award of service connection, the effective date for the 100% rating that was ultimately awarded should be retroactive to the date of discharge. Appellant's Br. at 9. According to Mr. Meeks, under the Court's decision in *Hazan v. Gober*, 10 Vet.App. 511, 519 (1997), the language

of 38 U.S.C. § 5110(b)(1) does not require that he show entitlement to a 100% evaluation under the rating schedule in order to receive that benefit for the 1970 to 1985 period. *Id.* at 10–11. The latter argument, that the 100% rating must apply retroactively to the initial date of service connection, is without merit on this record.

As the Secretary points out, the Court's holding in *Hazan, supra,* addresses a different subsection of the applicable statute: 38 U.S.C. § 5110(b)(2), rather than subsection (b)(1). Subsection (b)(2) provides as follows: "The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date." 38 U.S.C. § 5110(b)(2). In fact, the holding in *Hazan* is that evidence must demonstrate an increase in disability to the next level in order for increased compensation to be awarded. 10 Vet.App. at 519. While the *Hazan* majority speculated, in dictum, concerning the determination of an effective date for benefits under subsection (b)(1), nothing in that opinion would mandate—or permit—the result sought by Mr. Meeks.

The Court holds that the exception carved out by subsection (b)(1) applies, by its terms, to the general rule set forth in subsection (a) that an award of compensation may not be effective "earlier than the date of receipt of application therefor." However, section 5110(a) provides that "an award ... shall be fixed in accordance with the facts found." The subsections of 38 U.S.C. § 5110 must be read in the context of the full section. *See Hazan, supra; Wright v. Gober,* 10 Vet.App. 343, 347 (1997). While subsection 5110(b)(1) allows for compensation back to the date of discharge if an application is filed within one year of discharge, it does not require that the 100% rating ultimately awarded must be retroactive if, on the record, that rating level does not accord "with the facts found." *See* 38 U.S.C. § 5110(a); *see also* SUTHERLAND'S § 46.05 (parts of statute must be read to harmonize). The Court offers no view as to the outcome where the record would not support a retroactive determination as to level of disability while a claim for service con-

nection continued pending, because that is not the case here presented. Nor is this a case in which the record demonstrates that a veteran's level of disability would have been noncompensable at the time of discharge, but warranted a compensable rating at the time a claim filed within one year after separation, *see* 38 U.S.C. § 5110(b)(1); 38 C.F.R. § 3.400(a), (b)(2)(i), resulted in a determination of service connection.

Here, evidence in the record is sufficient to permit BVA findings as to Mr. Meeks' field of vision at various times during the period covered by the retroactive award of service connection. *See Fenderson v. West,* 12 Vet. App. 119 (1999) (at time of initial rating "separate [staged] ratings can be assigned for separate periods of time based on facts found"). There is a plausible basis in the record for the Board's conclusions concerning the appropriate retroactive ratings for the various stages of the progressive disorder from which Mr. Meeks suffers. *See* 38 C.F.R. § 4.84a, DC 6080; *see also Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990) (under "clearly erroneous" rule Court not permitted to substitute its judgment for BVA on issues of material fact). Hence, the Court must affirm the Board's assignment of the retroactive ratings as "in accordance with the facts found." 38 U.S.C. § 5110(a). Consistent with subsection 5110(b)(1), an award of compensation to Mr. Meeks, at the level demonstrated by the evidence of record, is effective back to the day after his date of discharge. Here, the record supports the BVA's conclusion that, at the time of his discharge from service, the constriction of Mr. Meeks' field of vision met the criteria for a 50% rating.

While, as the Board noted, Mr. Meeks' eye disability was not documented until 1986 as having reached the level of constriction that warranted the 100% rating, it concluded that the error in the RO's assignment of the 1985 "reopening" date was not prejudicial. Accordingly, it left that earlier effective date undisturbed. The Court, as well, must apply the rule of prejudicial error and will not disturb the BVA's decision on this point. 38 U.S.C. § 7261(b).

## III. CONCLUSION

Upon consideration of the record and the parties' briefs, the Court holds that Mr. Meeks has not demonstrated that the Board committed either factual or legal error that would warrant reversal or remand. *Gilbert, supra; see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). The Court is satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). Accordingly, the March 25, 1997, BVA decision is AFFIRMED.