# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-3438

SAMANTHA E. CARR, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

ROBERT M. CARR, INTERVENOR

On Appeal from the Board of Veterans' Appeals

(Decided April 16, 2019)

*Samantha E. Carr*, pro se.

*Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *Selket N. Cottle*, Deputy Chief Counsel; and *Sarah W. Fusina*, Senior Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

*Robert M. Carr*, pro se, as intervenor.

Before PIETSCH, BARTLEY, and TOTH, *Judges*.

TOTH, *Judge*, filed the opinion of the Court. PIETSCH, *Judge*, filed a dissenting opinion.

TOTH, *Judge*: This appeal addresses two statutory provisions related to education benefits that, at first glance, appear to conflict with each other. The first is 38 U.S.C. § 3695, which, subject to exceptions discussed later, establishes that a person cannot receive more than 48 months of educational benefits when she receives benefits under two or more GI Bill programs. The other is 38 U.S.C. § 3031(f)(1), which authorizes the extension of benefits for a recipient whose entitlement expires while a school term is underway. The discrete question here is what happens when a dual-program recipient hits the 48-month mark in the middle of a semester: Do the benefits terminate as directed by § 3695, or do they extend to the end of the semester under § 3031(f)(1)?

The appellant, Samantha Carr, found herself in this exact situation. A student at the University of Nevada, Ms. Carr ran up against § 3695's 48-month cap on the first day of a semester, whereupon VA informed her that she had exhausted her benefits. VA paid for the first day of classes but no more, and so her father, Robert Carr, stepped in to cover the rest of the tuition.

Samantha appealed to the Board and argued that, because she had already begun classes, § 3031(f)(1) obligated VA to extend her benefits until the end of the semester. The Board disagreed in a July 2016 opinion and ruled that the agency was correct to stop payment. Representing herself, Samantha appealed this decision. The Court affirms the Board's decision because 38 U.S.C. § 3312 establishes that Samantha's benefits were subject to § 3695 and its 48-month cap, and her situation did not fall within either of § 3695's listed exceptions.[1]

## I. BACKGROUND

The GI Bill has gone through numerous iterations since its inception in 1944, with the different versions codified into distinct "chapters" that together form the overall statutory framework. The chapters exist largely as stand-alone entities—some old, others new—containing benefit schemes and eligibility requirements discrete unto themselves. Because the chapters are largely self-sufficient entities, a recipient who qualifies under only one chapter need rarely venture beyond its confines to figure out what her benefits are and what she must do to qualify for them.

Things get complicated, however, when a recipient qualifies for benefits under multiple chapters.[2] This can happen, for instance, when a veteran serves during different periods or alternates between active duty and reserve status. Because the chapters often contain different benefits and requirements, conflicts may arise. The question then becomes whether something within the statutory framework effectively coordinates and governs the various chapters. As discussed at length later, chapter 36 performs this function.

The facts are not in dispute here and involve education benefits shared between a veteran and his daughter. Samantha Carr, the appellant, is the daughter of Robert Carr, who served on active duty in the Air Force from 1976 until 1980, and later in reserve components from 2002 until 2009. Robert earned various educational benefits during his two stints of service, namely chapter 34 (Vietnam Era GI Bill) benefits for his active duty term and chapter 33 (Post-9/11) benefits for his service in the reserves. Altogether, Robert accrued 48 months of benefits; he used some himself

---

[1] Ms. Carr also challenges the validity of 38 C.F.R. § 21.9635(y) and VA's disparate treatment of veterans and dependents to whom benefits have been transferred. However, because her status as a dependent has no bearing on the outcome here, we need not reach this question.

[2] Section 3695 imposes a limitation on the period of assistance on two or more "programs" and includes the individual chapters as among such programs. Although a recipient may qualify for benefits under more than one program (e.g., chapter), she may not receive assistance under two or more programs at the same time. In such cases, the recipient must choose to proceed under a single program. *See* 38 U.S.C. § 3322.

(specifically, 41 months and 11 days under chapter 34) and transferred the remainder to Samantha on August 9, 2009. All told, VA determined that, following the transfer from her father, Ms. Carr was entitled to 6 months and 19 days of benefits, which she duly used to pay her tuition at the University of Nevada.

Robert Carr received benefits under both chapters 33 and 34 and so fell under § 3695's 48-month limit on benefits for persons who receive benefits under more than one program. When Samantha assumed the remainder of Robert's benefits under chapter 33, she also assumed his status as a dual-program recipient subject to § 3695. When a veteran transfers GI Bill education benefits to an eligible dependent, the beneficiary is entitled to benefits "in the same manner as the individual from whom the entitlement was transferred." 38 U.S.C. § 3319(h)(2)(B). Similarly, VA's regulation governing transfer of entitlement, 38 C.F.R. § 21.9570, establishes that a "transferor may not transfer an amount of entitlement that is greater than the entitlement that he or she has available at the time of transfer." Thus, because Robert combined benefits under two or more programs and was subject to § 3695's limitations, Samantha was likewise subject to § 3695.

At the beginning of a particular semester, Ms. Carr had exactly one day of benefits remaining under her allotment. VA's regional office informed her that it would pay for the first day of classes but no more, as she had run against the 48-month cap of benefits outlined in § 3695. She appealed this ruling to the Board, contending that § 3031(f)(1)—incorporated into chapter 33 via 38 U.S.C. § 3321(b)(2)—obligated VA to extend her benefits until the end of the semester. The Board ruled against her in a July 2016 decision and she appealed to this Court. Alongside her appeal, we allowed Robert to intervene in light of his demonstrated financial stake in the case.

## II. ANALYSIS

The Court reviews statutory construction questions de novo. 38 U.S.C. § 7261(a)(1). As always, we begin with the language of the statute and the understanding that where a statute has a plain meaning, the Court shall "give effect to that meaning." *Meeks v. West*, 12 Vet.App. 352, 354 (1999).

The dispute centers not on the specific benefits that Samantha received, but on an apparent conflict between two provisions within the statute that governs GI Bill benefits. We use the word "apparent" deliberately: many statutory or regulatory provisions *appear* at first glance to conflict with each other until one examines them in relation to the larger framework within which they

operate and it becomes clear that they are capable of coexistence or that one of them is intended to control. In such situations, a statute is not "ambiguous" in the sense accounted for in *Chevron U.S.A. Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984), where a court defers to the agency's permissible construction of an ambiguous statute that it administers. Where a court can discern a clear reading of a provision, it applies that reading and "*Chevron* leaves the stage." *NLRB v. Alternative Entertainment, Inc.*, 858 F.3d 393, 417 (6th Cir. 2017).

Here, any conflict between § 3031(f)(1) and § 3695 falls away upon examination of the two other statutory provisions that are relevant in this case, namely sections 3312 and 3321(b)(2). Indeed, reading all four relevant provisions together yields the following conclusions: *first*, that Congress in § 3312(a) expressly subjected chapter 33 benefits to § 3695 and its 48-month cap for recipients of benefits under multiple programs; *second*, that § 3031(f)(1) is not among the two exceptions contained within § 3695; and *third*, that Congress did not intend § 3031(f)(1) to repeal § 3695 in situations such as this. We examine each of these in turn.

### A. Statutory Provisions

There are four statutory provisions that bear directly on this case, and their full texts are cited below the line. Section 3695(a)[3] states in unambiguous terms that the "aggregate period for which any person may receive assistance under two or more GI Bill provisions is not to exceed 48

---

[3] 38 U.S.C. § 3695 reads: Limitation on period of assistance under two or more programs

(a) The aggregate period for which any person may receive assistance under two or more of the provisions of law listed below may not exceed 48 months (or the part-time equivalent thereof):

    (1) Parts VII or VIII, Veterans Regulation numbered 1(a), as amended.
    (2) Title II of the Veterans' Readjustment Assistance Act of 1952.
    (3) The War Orphans' Educational Assistance Act of 1956.
    (4) Chapters 30, 32, 33, 34, and 36.
    (5) Chapters 107, 1606, 1607, and 1611 of title 10.
    (6) Section 903 of the Department of Defense Authorization Act, 1981 (Public Law 96–342, 10 U.S.C. 2141 note).
    (7) The Hostage Relief Act of 1980 (Public Law 96–449, 5 U.S.C. 5561 note).
    (8) The Omnibus Diplomatic Security and Antiterrorism Act of 1986 (Public Law 99–399).

(b) No person may receive assistance under chapter 31 of this title in combination with assistance under any of the provisions of law cited in subsection (a) of this section in excess of 48 months (or the part-time equivalent thereof) unless the Secretary determines that additional months of benefits under chapter 31 of this title are necessary to accomplish the purposes of a rehabilitation program (as defined in section 3101(5) of this title) in the individual case.

(c) The aggregate period for which any person may receive assistance under chapter 35 of this title, on the one hand, and any of the provisions of law referred to in subsection (a), on the other hand, may not exceed 81 months (or the part-time equivalent thereof).

months"; in equally forceful terms, § 3031(f)(1)[4] establishes that if a period of individual entitlement expires during a semester, such period "shall be extended to the end of the quarter or semester." The language of both provisions is unequivocal and admits of no discretion, so under § 3695 benefits *may not exceed* 48 months for a person who qualifies under two or more programs, while such benefits *shall be extended* under § 3031(f)(1) when they expire during semester.

Section 3321(b)(2)[5] serves as the bridge that links § 3031(f)(1)'s extensions to chapter 33 benefits. Ms. Carr contends that, because § 3321(b)(2) imports into chapter 33 the requirement to extend benefits until the end of a semester, it therefore conflicts with § 3695 and its 48-month cap. But this reading misses the mark because it fails to account for the other provision that § 3321(b)(2) incorporates, namely § 3312.[6]

A plain reading of § 3312 squarely refutes any notions of a purported conflict between § 3031(f)(1)'s end-of-semester provision and § 3695. In fact, the first four words of § 3312(a) are unequivocal in stating that chapter 33 is expressly subject to § 3695 and, by extension, its 48-month cap for dual-program beneficiaries. Significantly, the drafters of § 3312 used the conjunctive "and" to show that § 3695 applies even in cases where § 3031(f)(1)'s provision is invoked. That Congress expressly contemplated the two provisions coexisting as they relate to chapter 33 is of no small import—where courts can read statutes as capable of co-existence, they

---

[4] 38 U.S.C. § 3031 is titled "Time limitation for use of eligibility and entitlement." In relevant part, it reads:

(f)(1) If an individual eligible for educational assistance under this chapter is enrolled under this chapter in an educational institution regularly operated on the quarter or semester system and the period of such individual's entitlement under this chapter would, under section [3312], expire during a quarter or semester, such period shall be extended to the end of such quarter or semester.

[5] 38 U.S.C. § 3321 governs Chapter 33 benefits and is entitled "Time limitation for use of and eligibility for entitlement." Section 3321(b)(2) reads:

Applicability of section 3031 to termination.— Section 3031(f) shall apply with respect to the termination of an individual's entitlement to educational assistance under this chapter in the same manner as such section applies to the termination of an individual's entitlement to educational assistance under chapter 30, except that, in the administration of such section for purposes of this chapter, the reference to section 3013 shall be deemed to be a reference to section 3312 of this title.

[6] The relevant language of 38 U.S.C. § 3312 is: Educational assistance: duration

(a) In General.— Subject to section 3695 and except as provided in subsections (b) and (c), an individual entitled to educational assistance under this chapter is entitled to a number of months of educational assistance under section 3313 equal to 36 months.

(b) Continuing Receipt.— The receipt of educational assistance under section 3313 by an individual entitled to educational assistance under this chapter is subject to the provisions of section 3321(b)(2).

(Subsection (c) deals with the termination of benefits for recipients entering active duty and is not relevant here.)

have a duty to do so. *J.E.M. Ag. Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143–44 (2001). As discussed shortly, this rule of statutory construction also bears heavily on whether § 3031(f)(1) amounts to an implicit repeal of § 3695.

## B. Exceptions to § 3695

Recognizing that chapter 33 benefits are subject to § 3695, the next question is whether § 3031(f)(1)—via § 3321(b)(2)—constitutes an exception to § 3695's 48-month cap. In addressing this question, it's helpful to step back and examine the purpose Congress intended chapter 36 to have.

Congress enacted § 3695 in 1968 as a means of coordinating the various benefit regimes presented by the individual chapters.[7] The role that Congress intended for chapter 36 cannot be overstated: it was meant to stand above the individual chapters and coordinate them when gaps or conflicts arose. To that end, § 3695(a) specifically identifies and places under its umbrella a host of sources for education benefits and precludes recipients who qualify under two or more of the listed programs from aggregating their benefits beyond 48 months.[8] The list of programs—which includes the chapter 33 and 34 benefits at issue here—is exhaustive and is rounded out by two exceptions to the 48-month rule: Chapter 31 beneficiaries receiving vocational rehabilitation training may exceed 48 months of assistance on a case-by-case basis at the Secretary's discretion, while chapter 35 provides various classes of surviving spouses and dependents up to 81 months of benefits.

What's notable here is the explicit nature of the exceptions as both are spelled out within chapter 36—the specific chapter that coordinates all education benefits. Further, both exceptions were enacted *after* § 3695 (chapter 35 is of recent vintage, having been enacted in 2012) and both include express language removing them from the purview of § 3695.[9] The takeaway from this is clear: when Congress wanted to carve out exceptions to § 3695, it did so expressly rather than merely drafting conflicting provisions and leaving it to courts to determine whether these provisions were intended to eclipse § 3695. Here, the deliberate manner with which Congress

---

[7] Pub. L. No 90-631, § 1(d)(1), 82 Stat. 1331 (1968) (originally codified at 38 U.S.C. § 1791).

[8] 38 U.S.C. § 3695(a)(1)–(8).

[9] *See* Pub. L. No. 112-154, Title IV, § 401(a), 126 Stat. 1165, 1188 (2012) (excepting Chapter 35); and Pub. L. No. 96-466, § 103, 94 Stat. 2171, 2187 (1980) (excepting Chapter 31).

drafted express exceptions to § 3695 signals that it had no intention to bury other exceptions for courts to ferret out.

Which brings us to a well-known maxim of statutory construction: the expression of one thing implies the exclusion of others. *See N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 940 (2017). This is a technical way of saying that, where Congress has gone through the trouble of carving out explicit exceptions to its laws, other possible exceptions are generally not recognized as Congress did not see fit to include them. Unlike the carveouts in chapters 31 and 35, there is no indication that Congress intended § 3031(f)(1) to serve as an exception to § 3695.

Enacted in 1984,[10] § 3031(f)(1) does not include any reference to § 3695. Instead of anchoring § 3031(f)(1) within chapter 36's general scheme of governance, Congress placed provisions within the individual, program-specific chapters linking their benefit schemes with § 3031(f)(1). This placement is significant: had Congress placed § 3031(f)(1) within chapter 36, Ms. Carr may have a stronger argument that VA would be required to extend benefits until the end of the semester in all cases for the simple reason that chapter 36 administers all chapters. Instead, by placing § 3031(f)(1) within the individual chapters, Congress intended to show that the end-of-semester provision applied only within the particular chapter in which it was placed and was not intended to override the provisions in chapter 36 applicable to general governance of cases where benefits are received from multiple chapters. By its own terms, § 3695 expressly covers recipients who qualify for benefits under more than one program; by contrast § 3031(f)(1) stands as an exception to the discrete time limit within an individual chapter.

## C. Repeal by Implication

Finally, in the absence of express language, the only way that § 3031(f)(1)—which was enacted after § 3695—can constitute an implicit exception to § 3695 is if it effectively repealed the conflicting aspects of that provision. Few arguments, however, swim against a stronger current, as the Supreme Court has been unwavering in its aversion to recognizing repeals by implication. *See, e.g.*, *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976); *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007).

Here, Congress has given no signal that it intended to repeal § 3695. Repeals by implication are "not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Home Builders*, 551 U.S. at 662. In *Radzanower*, the Court recognized two narrow

---

[10] Pub. L. No. 98–525, § 702, 98 Stat. 2492, 2561 (1984) (originally codified at 38 U.S.C. § 1431(e)(1)).

classes that reveal congressional intent to repeal an earlier statute with a later one. 426 U.S. at 154. One type can be easily dispatched as it is not at issue here: where the latter act covers the whole subject of an earlier one and is clearly intended as a substitute. The other occurs where provisions of two acts stand in "irreconcilable conflict." *Id*. But even the issue of a whether a conflict is "irreconcilable" is read narrowly; it's not enough to find repeal whenever two statutes direct different outcomes to the same set of facts, as that merely states the problem. *Id*. at 155. The conflict must be so fundamental that there exists a "positive repugnancy" between the provisions. *Id*.

These concerns don't register here because the two statutes can coexist peaceably so long as § 3031(f)(1) holds to its lane. For example, a student whose 36-month term of benefits is set to expire can have benefits extended a few months until the end of the semester under § 3031(f)(1) without conflicting with § 3695, provided such extension does not exceed 48 months. As noted, § 3695 is expressly intended to cover recipients who qualify for benefits under more than one program; by contrast § 3031(f)(1) stands as an exception to the time limit within an individual chapter. Because § 3695 and § 3031(f)(1) can coexist, the latter cannot effect a repeal of the former. Where a court can read two statutes as capable of coexistence, it must do so. *See id*. For these reasons, the 48-month cap on benefits outlined in § 3695 controls in this instance and is not displaced by § 3031(f)(1).

Our dissenting colleague forwards a reading of the various provisions to posit that Congress did not intend § 3695 to impose a 48-month hard cap here but instead to yield to § 3031(f)(1)'s end-of-the-semester provision. While this reading is not without a certain appeal, it's fundamentally untenable because it requires the court either to disregard the first four words of § 3312(a), namely that the entire provision is "*Subject to section 3695*," or to read into the text of § 3695 an exception that Congress did not see fit to write into law.

As mentioned, Congress provided only two express exceptions to § 3695 and this is not among them. Courts must give effect to every provision within a statute, and where provisions can be read as capable of coexistence, courts have a duty to do so. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 115 (2014) ("When two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one statute to preclude the other from operation."). Under the Court's reading, § 3031(f)(1) and § 3695 function in unison, with the former serving as an exception to the 36-month limitation of benefits and the

latter imposing a 48-month cap on the back end for dual-program recipients. By contrast, the dissent's reading—though claiming to give effect to both provisions—effectively nullifies one of them by casting § 3695 to the sidelines. But the only plausible way that a court can decline to apply an express statutory provision is to find that Congress implicitly repealed § 3695 in this context. There is simply no indication of this.

### III. CONCLUSION

Having considered the parties' briefs, the record before the Court, and the relevant law, the Court AFFIRMS the July 14, 2016, Board decision.


PIETSCH, *Judge*, dissenting: The majority and I begin our interpretation of the provisions at issue in this case from different starting points. The majority, along with the Secretary, reads the appellant's argument as a request to overturn, repeal, or write an exception into the statutory 48-month limit on the educational assistance benefits that she and her father shared. I do not see it that way. She has reached her 48-month limit and does not argue otherwise. She instead asks for the Court to allow her to take advantage of a provision that says that capped benefits may be extended until the end of the semester in which the limit is reached, and she argues that the extension provision operates independently of and in concord with the cap provision.

No one disputes that extension provisions apply to the individual limits set forth in chapters 33 and 34, which are the two chapters under which the appellant's father attained educational assistance. 38 U.S.C. §§ 3321(b)(2), 3461(b). The question as I see it is whether a statute creating a 48-month general limit on multiple-chapter education assistance benefits clearly conveys that beneficiaries who are subject to *that* limit are prohibited from benefitting from the statutory extensions that would have unquestionably applied to them had they been eligible for benefits under a single chapter only. I am bound by law to read the difficult provisions in question in a manner favorable to veterans if I can otherwise find no clear separation between competing interpretations. *See Henderson v. Shinseki*, 562 U.S. 428, 441 (2011). With that principle in mind, I find that the provisions discussed below are best read to provide an end-of-semester extension to beneficiaries subject to the 48-month limit. Consequently, I respectfully dissent.

The intervenor, veteran Robert M. Carr, established basic entitlement to VA educational assistance benefits under 38 U.S.C. § 3461. Pursuant to section 3461(c), "[e]xcept as provided in

subsection (b) . . . no eligible veteran shall receive educational assistance under this chapter in excess of 45 months." Subsection (b) states that "[w]henever the period of entitlement under this section of an eligible veteran who is enrolled in an educational institution regularly operated on the quarter or semester system ends during a quarter or semester, such period shall be extended to the termination of such unexpired quarter or semester."

Mr. Carr later established entitlement to educational assistance benefits under chapter 33. Pursuant to 38 U.S.C. § 3312(a), "[s]ubject to section 3695 and except as provided in subsections (b) and (c), an individual entitled to educational assistance under this chapter is entitled to a number of months of educational assistance equal to 36 months." This provision references three others. Section 3312(c) plays no part in this case. Section 3695(a) states that "[t]he aggregate period for which any person may receive assistance under two or more of the provisions of law listed below [including chapters 33 and 34] may not exceed 48 months (or the part-time equivalent thereof)."

Under section 3312(b), "[t]he receipt of educational assistance under section 3313 by an individual entitled to educational assistance under this chapter is subject to the provisions of section 3321(b)(2)." That, in turn, leads to the following provision:

> Applicability of section 3031 to termination. Section 3031(f) shall apply with respect to the termination of an individual's entitlement to educational assistance under this chapter in the same manner as such section applies to the termination of an individual's entitlement to educational assistance under chapter 30, except that, in the administration of such section for purposes of this chapter, the reference to section 3013 shall be deemed to be a reference to section 3312 of this title.

38 U.S.C. § 3321(b)(2).

> Following the trail to section 3031(f)(1) leads to this provision:

> If an individual eligible for educational assistance under this chapter is enrolled under this chapter in an educational institution regularly operated on the quarter or semester system and the period of such individual's entitlement under this chapter would, under section [3312], expire during a quarter or semester, such period shall be extended to the end of such quarter or semester.

38 U.S.C. § 3031(f)(1).

The Court essentially concludes that Congress plainly conveyed (else *Chevron* would be active) that in multiple-chapter cases that include chapter 33 benefits, if section 3695 comes into play, then section 3031(f)(1) no longer functions. Courts must attempt to read difficult statutory schemes in a manner that creates a harmonious whole. *See King v. Shinseki*, 26 Vet.App. 484, 491 (2014). I think that is entirely possible here and I do not see the conflicts that the Court identifies.

10

In my view, Congress, through the operation of the conjunction "and" in section 3312(a), intended both section 3695 and section 3031(f)(1) to have simultaneous and equal effect, whether functioning independently or in tandem. *See Scialabba v. De Osorio*, 573 U.S. 40, 7071 (2014). A veteran may earn the right to educational assistance benefits under multiple code provisions and, on paper, become eligible for dozens of months of benefits. Section 3695(a) instructs that a veteran may never be awarded more than 48 months of benefits. Section 3031(f)(1), operating simultaneously as the word "and" requires, indicates that if that 48 months ends mid-semester, then payments will continue until that semester is complete.

Although one must march through several provisions to put it together, the cap/extension protocol at work in multiple-chapter cases involving chapter 33 does not differ materially in language or form from the cap/extension protocol at work in single-chapter cases. By referring to section 3695, Congress set a cap for beneficiaries who drew benefits from multiple chapters and thus exceeded all limits set by those chapters individually. By then using "except as provided" just as it did when it created individual-chapter end-of-semester extensions in sections 3321(a) and 3461(c), it indicated that benefits should continue when a veteran or other beneficiary reaches that 48-month limit mid-semester. *See Donnellan v. Shinseki*, 24 Vet.App. 167, 173 (2010) (noting the "well-established rule of statutory construction that terms in a statute have the same meaning to identical language used in related parts of the same statutory scheme").

The provision at issue here is native to chapter 33. Section 3013, which is responsible for setting the "[d]uration of basic educational assistance," contains at least seven clauses that begin with the phrase "[s]ubject to section 3695." Section 3031(f)(1) explicitly applies to section 3013 and contains no language stating that it doesn't apply when section 3695 comes into play. Given the detail and complexity (even micromanagement) of this statutory scheme, I cannot believe Congress would allow extensions for educational assistance benefits (even under section 3511(b)(4), for parents or spouses who "no longer meet[] requirements" for assistance during the semester they wish to extend) except for veterans who come under section 3695 without saying so directly.

My opinion is not shaken by the exceptions within section 3695 that the majority discusses. The first, in section 3695(b), applies to chapter 31, which involves vocational rehabilitation and contains a scheme much different from the ones in other parts of title 38 part III. Subsection (b) is, indeed, not an exception at all, but a rule created expressly for that chapter, which is

demonstrated by the fact that Congress did not include chapter 31 in the exclusive list of provisions to which section 3695(a) applies. The second exception, in section 3695(c), involves the interaction of chapter 35 benefits with benefits that arise from chapters outside of title 38 part III.

I also view section 3695(a) as having a different purpose than the one the majority identifies. Section 3695, which is titled "Limitation on period of assistance under two or more *programs*," seems primarily to be a connection between educational assistance benefits and the outside world. 38 U.S.C. § 3695(a) (emphasis added). The 48-month limit that it creates applies to several provisions outside of title 38. Its broad application and specific exceptions convince me that it was not intended to terminate end-of-semester benefits found only in title 38 part III. I also don't see why Congress should have written a section 3031(f)(1) extension into section 3695 when it elsewhere included language that conveys that the two should coexist. I am more persuaded by the fact that section 3695 contains no language restricting the end-of-semester benefits that are a recurring feature of title 38 part III and that are not restricted elsewhere.

The Court's analysis creates two classes of veterans, those who enjoy end-of-semester benefits and those who do not, the latter made up of veterans who generally accrued more benefits than their counterparts. Congress, which specifically codified the purposes behind educational benefits in more than one chapter, wrote that it wished to preserve an all-volunteer fighting force by "aid[ing] in the recruitment and retention of highly qualified personnel," "to give special emphasis to providing educational assistance *to aid in the retention of personnel* in the Armed Forces," and "to enhance our Nation's competitiveness through the development of a more highly educated and productive work force." 38 U.S.C. § 3001 (4), (5), (6) (emphasis added); *see also* 38 U.S.C. § 3451. With these purposes in mind, I cannot imagine that Congress would wish for veterans who earned more educational assistance benefits not to enjoy the same end-of-semester benefit as those who earned less.

The Secretary provides hypotheticals explaining how my preferred interpretation may open the door to rampant abuse of the educational benefits system. Another hypothetical, however, cuts the other way. Imagine a veteran who holds only 45 months of chapter 34 benefits starts a semester that is roughly four months long with, like the appellant here, one day of benefits remaining. VA must pay for the remainder of the semester. Under the Court's reading, a veteran who enjoys 48 months of educational assistance benefits under two chapters and started school at the same time as the other veteran must pay for the final month of the semester out of pocket. In essence, the

first veteran now enjoys 49 months of benefits to his colleague's 48 months even though he earned benefits under only one chapter.

To put it another way, the Court's decision plainly suggests that months accrued under a statutory extension "count." Now, if the veteran who "used" four months of extension benefits under chapter 34 later returns to service, he will be denied the use of any additional educational assistance benefits he accrues because he has now surpassed his section 3695 limit. That is counter to the Congressional purposes discussed above, and I fear that veterans faced with the prospect of paying for several months of school may decline to enroll and leave earned and deserved benefits unused.

Again, I cannot imagine that Congress, which told us that it created this scheme to encourage enlistment in the Armed Forces and to reward dedicated service members, would allow such results without saying so clearly. Given my duty to settle close interpretive questions in the veteran's favor, I would hold that Mr. Carr's benefits, transferred to the appellant through 38 U.S.C. § 3319(a), (h)(2)(B), allowed her to receive reimbursement for the cost of her education until the end of the semester in which she reached the 48-month cap on her benefits. *See Trafter v. Shinseki*, 26 Vet.App. 267, 272 (2013) (the Court should reject the Secretary's interpretation if it "is unfavorable to veterans, such that it conflicts with the beneficence underpinning VA's veterans benefits scheme, and a more liberal construction is available that affords a harmonious interplay between provisions").

13